1
2
3
4
5

UNITED STATES DISTRICT COURT

6

EASTERN DISTRICT OF CALIFORNIA

7
8

REBECCA ANN TOLEDO,

No. 1:21-cv-01743-KJM-GSA

9

Plaintiff,

10

v.

**FINDINGS AND RECOMMENDATIONS
TO DENY PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT, TO DIRECT
ENTRY OF JUDGMENT IN FAVOR OF
DEFENDANT COMMISSIONER OF
SOCIAL SECURITY AND AGAINST
PLAINTIFF**

11

COMMISSIONER OF SOCIAL
SECURITY,

12
13

Defendant.

14

**(Doc. 17)**

15
16

## I.    Introduction

17

Plaintiff Rebecca Toledo seeks judicial review of a final decision of the Commissioner of

18

Social Security denying her application for supplemental security income pursuant to Title XVI of

19

the Social Security Act.[1]

20

## II.    Factual and Procedural Background

21

Plaintiff applied for supplemental security income on November 29, 2019, alleging

22

disability due to Sjogren's syndrome, rheumatoid arthritis, systemic scleroderma, hypothyroidism,

23

crest disease, chronic gout, Raynaud's syndrome, and chronic fatigue.   AR 73–74. The

24

Commissioner denied the applications initially on July 9, 2020, and on reconsideration on October

25

19, 2020.  AR 87; 102.  Plaintiff appeared for a telephonic hearing before an ALJ on March 23,

26

2021.  AR 39–72.  The ALJ issued an unfavorable decision dated April 30, 2021.  AR 12–38.  The

27

Appeals Council denied review on October 14, 2021 (AR 1–6), and this appeal followed.

28

---

[1] The parties did not consent to the jurisdiction of a United States Magistrate Judge.  Doc. 7, 9.

1

2

### III.   The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.   "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).   Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.   *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).   It is more than a scintilla, but less than a preponderance.   *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).   If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).   "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. § 1382c(a)(3)(A).   An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f).   The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the

2

claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## IV.    The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of November 29, 2019.  AR 17.  At step two the ALJ found that Plaintiff had the following severe impairment: rheumatoid arthritis.  AR 17.  The ALJ also found at step two that Plaintiff had the following non-severe impairments: obesity, Raynaud's Syndrome, Hashimoto's Thyroiditis, Sjögren's syndrome, acute kidney disease, bilateral varicose veins, sinusitis, hiatal hernia and small lung nodules.  AR 17.  Finally, at step two the ALJ found that the following alleged conditions were not medically determinable impairments: gout, scleroderma and coccidioidomycosis.  AR 17.

At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 18–19.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the following RFC:

> the claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently. She could sit without limitations in an 8-hour workday with normal breaks. She could stand or walk 6 hours in an 8-hour workday with normal breaks. This capacity most closely approximates light work

3

as defined in 20 CFR 416.967(b) except she could never climb ladders, ropes, or scaffolding. She could frequently climb ramps or stairs; frequently stoop, crouch, crawl, or kneel. She could frequently feel with the right upper extremity. She must avoid all exposure to unprotected heights or work around dangerous moving machinery.  AR 19–31.

At step four the ALJ concluded that Plaintiff had no past relevant work (AR 31), then at step five the ALJ found that considering Plaintiff's vocational profile there were jobs existing in significant numbers in the national economy that Plaintiff could perform, namely: marker II, housekeeping cleaner and photocopy machine operator.  AR 32.  Accordingly, the ALJ concluded Plaintiff was not disabled since the application date of November 29, 2019.  AR 32.

## V.   **Plaintiff's Assertion**

Plaintiff asserts that the ALJ's RFC is unsupported by substantial evidence because the ALJ erred in failing to find Plaintiff's Sjogren's syndrome, varicose veins and Raynaud's syndrome as severe impairments at step two and therefore failed to incorporate limitations imposed by these conditions into the RFC.  MSJ at 4–20, Doc. 15.

### A.   **Legal Standard**

At step two the ALJ must determine if the claimant has a medically severe impairment or combination thereof.  "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20  C.F.R. §§ 404.1521(a) & 416.921(a). Basic work activities are "the abilities and aptitudes necessary to do most jobs," and those abilities and aptitudes include: (1) physical functions such as walking, standing, sitting, lifting, and carrying; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) & 416.921(b).

Despite the meaning of the word "severe" in common parlance, the step-two severity

threshold is not high.  "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." *Smolen*, 80 F.3d at 1290.  "Step two, then, is a de minimis screening device [used] to dispose of groundless claims[.]" *Smolen*, 80 F.3d at 1290.

Before proceeding to steps four and five, the ALJ must determine the claimant's RFC. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883.  *See also* 20 C.F.R. § 404.1545(a)(3) (RFC determined based on all relevant medical and other evidence).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

## B.  Analysis

### 1.  Step Two Finding Generally

Plaintiff contends that the ALJ failed to find Sjogren's syndrome, varicose veins and Raynaud's syndrome to be severe, thus the RFC was unsupported.  MSJ at 8, Doc. 17.  Importantly though, both severe and non-severe impairments are considered at the RFC stage.  *See* 20 C.F.R. §

404.1545 (explaining the agency considers "all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not "severe.").

Plaintiff further argues that the ALJ's step two finding was erroneous because it was not "clearly established by medical evidence."  Br. at 8 (citing SSR. 85–28).  However, this standard is inapplicable here because it applies when the five-step sequential analysis ends at step two and the ALJ finds no severe impairments.  *See* SSR 85-28 ("A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e. . . . If such a finding is not <u>clearly established by medical evidence</u>, however, adjudication must <u>continue through the sequential evaluation process</u>.") (emphasis added).  Defendant correctly responds that any potential error at step two is harmless as the analysis proceeded past step two with respect to other impairments, and that all impairments were considered at the RFC stage.  Resp. at 3, Doc. 18.  Defendant cites *Buck* in which the Ninth Circuit explained that step two is merely a threshold determination meant to screen out weak claims,  that once the analysis reaches step five the RFC "*should* be exactly the same regardless of whether certain impairments are considered 'severe' or not."  *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (emphasis in original).

In short, a step two error is neither per se prejudicial, nor per se harmless.  At issue is whether the impairments, both severe and non-severe, were adequately addressed at the RFC stage and whether the limitations arising therefrom were incorporated where appropriate.

### 2.      Sjögren's Syndrome

Plaintiff takes issue with the ALJ's reliance on the testimony of Dr. Zuckerman, an ophthalmologist, that Plaintiff's Sjögren's syndrome would require her to occasionally stop working to administer eye drops.  MSJ at 8 (citing AR 22–23).  Plaintiff explains that "The ALJ misclassifies this condition as an entirely visual-based impairment, but the records reflect that

Sjögren's impacts all body systems, and a single symptom is dry eyes." *Id.* Here, the ALJ did in fact describe it as "a dry eye syndrome called Sjögren's Syndrome," and subsequently explained that "My impression of Dr. Zuckerman's testimony is that the claimant has Sjögren's Syndrome, an eye disorder which causes dry eyes . . ." ( AR 22), which  is an oversimplification.  AR 55. Although dry eyes and dry mouth are the two most common symptoms of this autoimmune disorder, other symptoms include joint pain/stiffness, skin rashes and fatigue.[2]

Plaintiff emphasizes that she reported fatigue at multiple rheumatology visits and was noted to have a rash and required steroids for treatment. MSJ at 9 (citing AR 358, 371, and 867).  Plaintiff cites to a July 25, 2019 exam which lists "Sjögren's syndrome with other organ involvement", in addition to rheumatoid arthritis and other conditions.  AR 358.  The exam notes reflect arthralgias, fatigue, joint swelling and rash among other symptoms and signs.  With respect to fatigue, there is no indication in the visit notes whether the symptom is attributable to rheumatoid arthritis or Sjögren's syndrome, nor is there reason to conclude that this would constitute an impactful distinction.  The more pertinent question here is whether the syndrome caused work related limitations inconsistent with the ALJ's RFC assessment.  Plaintiff offers no help in answering this question, such as by citing or describing evidence concerning the nature of the fatigue and its limiting affects.  Similarly, with respect to the rash, Plaintiff offers no discussion of its alleged functional impact.

A second visit cited by Plaintiff is a March 2019 dentist visit for a crown replacement, which perhaps was cited in error as it seemingly has no apparent relevance to Plaintiff's rheumatic conditions or corresponding limitations.  AR 371.  A third visit cited by Plaintiff occurred on January 22, 2021 which noted little more than the fact that Plaintiff was taking prednisone for Sjögren's syndrome and was following with rheumatology for the condition.  AR 867.

---

[2] https://www.mayoclinic.org/diseases-conditions/sjogrens-syndrome/symptoms-causes/syc-20353216

In sum, Remand is not appropriate solely to correct the ALJ's misunderstanding that Sjögren's syndrome is merely a dry eye disorder.  The cited visit notes do not establish or suggest that Sjögren's syndrome caused any functional limitations that are distinct from those associated with rheumatoid arthritis, other than the occasional need to administer eye drops.

### 3.   Varicose Veins

Plaintiff also takes issue with the ALJ's finding that varicose veins (aka "varicosities," "chronic veinous insufficiency," or "vascular impairment,") was not a severe impairment because it did not cause significant limitations and because it did not meet the durational requirement.  MSJ. at 9 (citing AR 27).

With respect to the durational requirement, Plaintiff explains that: 1- beginning April 22, 2019  the record notes decreased pulses and bilateral varicose veins, 2- from April 22, 2019  forward she was prescribed a pneumatic pump, compression stockings, underwent sclerotherapy and veinous ablation, and 3- an April 17, 2020 examination showed bilateral greater saphenous reflux with varicose veins and edema wherein she was advised to wear compression stockings until her 6-month follow up.  MSJ at 9 (citing AR 27, 714).

Plaintiff asserts that although these records span a period just short of one year, it is highly unlikely that the condition arose precisely on the first day it was observed in the records on April 22, 2019, and that Plaintiff was advised to continue wearing compression socks for six months after the April 2020 follow up.  Plaintiff's point is well taken as it is in fact likely that this condition met the durational requirement.

Importantly however, putting aside question of durational requirements, the ALJ reasoned that this condition did not cause significant limitations.  First, the ALJ covered the extensive medical evidence in detail, including: **1-** April 2019 notes documenting decreased pulses and moderate to severe bilateral LE varicose veins, referral to vascular surgery, and prescription for

compression socks (Exhibit 2F, p. 19, 21); **2-** August 28, 2019 complaints of burning, numbness, itching, tingling, cramps, fatigue, swelling, heaviness, soreness, and skin discoloration, worse on the right, that swelling is worse after all day on foot but relieved with rest and pump use, she was referred for a venous ultrasound and advised to wear compression stockings (Exhibit 5F, p. 5-6); **3-** per October 2, 2019 visit notes, the ultrasound showed bilateral greater saphenous vein reflux, she noted continued burning, cramps, swelling, and itching despite compression sock use (Exhibit 5F, p. 7); **4-** on October 18, 2019 she underwent radiofrequency ablation to the right greater saphenous vein (Exhibit 5F, p. 8-9); **5-** on November 27, 2019 she complained of continued itching, numbness, tingling, cramps, and pain she was scheduled for right calf sclerotherapy which was performed on January 15, 2020 (Exhibit 5F, p. 11-13); **6-** progress notes dated October 2019, January 2020, and February 2020 indicate the claimant denied lower extremity edema, leg swelling, and examination findings confirmed normal range of motion, normal gait, and no edema (Exhibits 6F, pp. 10, 15, 21, 24, 27; 12F, p. 115); **7-** at a follow-up dated April 17, 2020, the claimant reported she continues to have cramps and some mild aching, however it does not interfere with her life. She stated that her swelling and itching are now resolved. She had been wearing compression stockings over the last several months and they do help relieve symptoms (Exhibit 5F, p. 14). The diagnostic assessment indicated the claimant was status-post right greater saphenous vein radiofrequency ablation closure and sclerotherapy; was doing okay from the procedure; and swelling has improved. She was advised to follow up in 6 months and to continue wearing compression stockings (Exhibit 5F, p. 15); **8-** April 20, 2020 notes indicate she denied LE edema (Exhibit 12F, p. 33); **9-** April 28, 2020 notes record no peripheral vascular symptoms (Exhibits 8F, p. 15; 15F, p. 10; 17F, p. 131); and, **10-** most recent encounter notes of January 22 and February 5, 2021 indicate the claimant denied leg swelling (Exhibit 17F, pp. 56, 74).

The ALJ then explained that he agreed with the assessment of Dr. Vu who noted the relevant

history and treatment but opined that this condition did not further reduce the claimant's exertional capacities for standing and walking below the light level, or about six hours each in an eight-hour workday.  In response, Plaintiff simply contends that her veinous condition "was such that it was observable on testing and required a surgical intervention, so it is hard to fathom how that did not meet a de minimis standard."  MSJ at 10.  But above-cited records amply demonstrate and support the ALJ's conclusion that Plaintiff's varicose veins did not impose significant ongoing functional limitations, a conclusion further buttressed by the expert opinion of Dr. Vu who reviewed all relevant treatment records.  AR 63–64.

### 4.    Raynaud's Syndrome (aka Raynaud's phenomenon)

Finally, Plaintiff takes issue with the ALJ's finding that Raynaud's syndrome was non-severe, which Plaintiff contends was predicated on an erroneous finding that from November 6, 2019 onward there were no additional findings consistent with Raynaud's phenomenon.  MSJ at 10 (citing AR 25).  Plaintiff contends this "is not an accurate reflection of the record" which demonstrates that Plaintiff continued to report arm and hand pain on March 5, 2020 and May 6, 2020, and was noted to have a positive serology. Ar. 464-465.

However, as Defendant correctly notes, the provider tied the positive serology to rheumatoid arthritis, not Raynaud's.  AR 465.  The same appears to be true of her hand pain as the musculoskeletal examination documents findings of "proximal interphalangeal joint swelling throughout her hands," which is characteristic of rheumatoid arthritis, whereas the cold hands attributable to Raynaud's were observed only at earlier encounters as the ALJ acknowledged.  *See* AR 471 (a November 6, 2019, encounter noting clinical findings of cold hands).  Plaintiff's cited records are not counterexamples to the ALJs finding that there were no clinical findings after November 6, 2019 consistent with Raynaud's phenomenon-- though subsequent visits noted the condition as part of her medical history.

### C.    Conclusion

Plaintiff identifies no harmful error.

### VI.    Recommendations

For the reasons stated above, the recommendation is that the Court find that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled, that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be denied, and that the Clerk of Court be directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Rebecca Ann Toledo.

### VII.    Objections Due Within 14 Days

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   __June 15, 2024__        _____/s/ Gary S. Austin
                                    UNITED STATES MAGISTRATE JUDGE

11